## HUMBERTO GUZMAN vs. COMMONWEALTH.

Suffolk. April 5, 2010. - November 23, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Erroneous Conviction.*

Discussion of the Erroneous Convictions Law, G. L. c. 258D. [355-357]

This court concluded that under G. L. c. 258D, § 1 (B) (ii), of the Erroneous Convictions Law, eligibility to bring suit requires that judicial relief be granted on grounds resting upon facts and circumstances probative of the proposition that the claimant did not commit a particular crime. [357-362]

In a civil action in which the plaintiff claimed that he was entitled to recover under the Erroneous Convictions Law, G. L. c. 258D, the judge erred in granting summary judgment in favor of the Commonwealth, where it could not be said that the grant of a new trial in the underlying criminal case, on the ground that the defense of misidentification was prejudiced by defense counsel's conflict of interest that resulted in his failure to call certain witnesses who would have testified that the plaintiff was not the person identified by police detectives as the one they claimed to observe selling them drugs, did not rest on facts and circumstances probative of the proposition that the plaintiff did not commit the crime charged in the underlying action, as required by G. L. c. 258D, § 1 (B) (ii). [362-366]

CIVIL ACTION commenced in the Superior Court Department on March 3, 2006.

The case was heard by *Diane M. Kottmyer*, J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Catherine E. Sullivan*, Assistant Attorney General (*Gwen A. Werner*, Assistant Attorney General, with her) for the Commonwealth.

*Steven J. Rappaport* for the plaintiff.

*David M. Siegel*, for New England Innocence Project, amicus curiae, submitted a brief.

CORDY, J. In this case, we interpret one of the eligibility provisions of the recently enacted Massachusetts Erroneous Convic-

tions Law, which provides legal redress to certain individuals who can show that they have been wrongfully convicted of a felony and incarcerated. See G. L. c. 258D (c. 258D). The plaintiff, Humberto Guzman, whose convictions of trafficking, distribution, and conspiracy to distribute cocaine were vacated after he served nearly four years in prison, brought this lawsuit claiming that he was entitled to recover under c. 258D.

The Commonwealth filed a motion to dismiss the claim for lack of subject matter jurisdiction under Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), and for failure to state a claim under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). At the hearing on the motion, the parties agreed that the relevant documents were included in the Commonwealth's appendix to the motion and that the motion should be treated as one for summary judgment. The judge allowed the Commonwealth's motion, concluding that Guzman would be unable to prove that he is within the class of persons eligible for relief. Guzman appealed. The Appeals Court reversed and reinstated Guzman's claim, *Guzman* v. *Commonwealth*, 74 Mass. App. Ct. 466, 479 (2009) (*Guzman*). We granted the Commonwealth's application for further appellate review.[1] We agree with the Appeals Court's well-reasoned opinion, and for similar reasons, we reverse. We further direct that partial summary judgment be entered against the Commonwealth on Guzman's claim of eligibility.

1. *The Erroneous Convictions Law*. In 2004, in the wake of a growing number of exonerations both in Massachusetts and across the nation, the Legislature enacted c. 258D, which created a remedy, in the form of a new cause of action (and a corresponding waiver of sovereign immunity) that could be brought against the Commonwealth by persons who had been wrongfully convicted and imprisoned.[2,3] The statute provides a variety of remedies for a person so harmed, including the recovery of

[1]We acknowledge the amicus brief of the New England Innocence Project.

[2]Representative Patricia Jehlen first filed a bill in 1999 providing for compensation to those individuals wrongfully convicted and later released. In her testimony before the Committee on Public Safety, she explained that, in part, the motivation for the filing of the bill stemmed from the "disparate treatment" of two men, Bobby Joe Leaster and Lawyer Johnson, who were both convicted of murder in 1971 and released after spending more than ten years in prison. The Legislature awarded Leaster compensation by special act in 1992 but

up to $500,000 in damages from the Commonwealth.[4] G. L. c. 258D, § 5.

Relevant here are certain subsections of G. L. c. 258D, § 1. General Laws c. 258D, § 1 (A), authorizes certain claims to be brought against the Commonwealth, thereby waiving the Commonwealth's sovereign immunity as to such claims. General Laws c. 258D, § 1 (B), is the eligibility provision, which limits "[t]he class of persons eligible to obtain relief" to:

"(i) those that have been granted a full pardon pursuant to section 152 of chapter 127, if the governor expressly states in writing his belief in the individual's innocence, or

"(ii) those who have been granted judicial relief by a state court of competent jurisdiction, *on grounds which tend to establish the innocence* of the individual as set forth in clause (vi) of subsection (C), and if (*a*) the judicial relief vacates or reverses the judgment of a felony conviction, and the felony indictment or complaint used to charge the individual with such felony has been dismissed, or if a new trial was ordered, the individual was not retried and the felony indictment or complaint was dismissed or a nolle prosequi was entered, or if a new trial was ordered the individual was found not guilty at the new trial; and

never acted on a similar petition for Johnson. Testimony of Representative Patricia Jehlen to the Committee on Public Safety (March 19, 2003), available at http://web.archive.org/web/20040807031601/http://patjehlen.org/2506 testimony.html (last visited November 22, 2010). See Fisher, Convictions of Innocent Persons in Massachusetts: An Overview, 12 B.U. Pub. Int. L.J. 1, 9-10, 34-38 (2002) (discussing Leaster and Johnson cases).

[3]As evidenced by the two cases discussed in note 2, *supra*, traditional civil and tort remedies have been noted to be lacking in providing sufficient redress. See Wisneski, "That's Just Not Right": Monetary Compensation for the Wrongfully Convicted in Massachusetts, 88 Mass. L. Rev. 138, 139-140, 145-148 (2004).

[4]The other remedies enumerated in G. L. c. 258D include furnishment of "services" by the Commonwealth to address "deficiencies in the [claimant's] physical and emotional condition that are shown to be directly related to the [claimant's] erroneous felony conviction and resulting incarceration" (G. L. c. 258D, § 5 [A]); a fifty per cent reduction in tuition and fees at State and community colleges in the Commonwealth, including the University of Massachusetts at Amherst and its satellite campuses (*id.*); and the expungement or sealing of the criminal records pertaining to the erroneous felony conviction (G. L. c. 258D, § 7).

(b) at the time of the filing of an action under this chapter no criminal proceeding is pending or can be brought against the individual by a district attorney or the attorney general for any act associated with such felony conviction" (emphasis added).

General Laws c. 258D, § 1 (C), sets out the elements of the claimant's case and the applicable burden of proof. For present purposes, the salient language is found in the introduction to § 1 (C) and subsections (i) and (vi):

"In order for an individual to prevail and recover damages against the [C]ommonwealth in a cause of action brought under this chapter, the individual must establish, by clear and convincing evidence, that: — (i) he is a member of the class of persons defined in subsection (B); [and] . . . (vi) he did not commit the crimes or crime charged in the indictment or complaint or any other felony arising out of or reasonably connected to the facts supporting the indictment or complaint, or any lesser included felony . . . ."

Guzman contends that he is eligible to bring this action because his conviction was vacated or reversed "on grounds which tend to establish [his] innocence" and his case was subsequently dismissed. As is more fully explained below, Guzman filed a motion for a new trial in the underlying criminal case, which was allowed by the trial judge on October 13, 1994. In allowing the motion, the judge concluded that Guzman had been denied the effective assistance of counsel at trial because a conflicting interest of his trial counsel prejudiced Guzman's defense of misidentification. Subsequent to the allowance of the motion for a new trial, a different judge dismissed the felony indictments against Guzman with prejudice.[5]

2. *Guzman's eligibility.* a. *Statutory language.* In determining

[5]The investigating police detectives in Guzman's case, Kenneth Acerra and Walter Robinson, faced Federal indictments on multiple charges in March, 1997, relating to their falsification of affidavits filed in support of search warrants and the theft of evidence, including cash and drugs, seized after execution of the warrants. The indictments against Acerra and Robinson specifically referenced the case against Guzman and alleged that the officers stole a large amount of cash during this investigation. Acerra and Robinson pleaded guilty

whether Guzman was eligible to bring his claim, we must interpret and then apply the statutory language requiring that the judicial relief granted (in this case a new trial) was "on grounds which tend to establish the [plaintiff's] innocence." G. L. c. 258D, § 1 (B) (ii). In the process of enacting c. 258D, the wording of this provision was the subject of a specific exchange between the legislative and executive branches. The version of the bill initially passed by the Legislature and sent to the Governor for signature provided for eligibility where judicial relief had been granted "on grounds consistent with . . . innocence." 2004 House Doc. No. 4166, as replaced by 2004 House Doc. No. 4981. The Governor returned the bill with a number of proposed amendments "to clarify and improve certain ambiguous portions of the bill so that it will accomplish its intended goals." 2004 House Doc. No. 5030. Among the proposed changes sought by the Governor was the replacement of the phrase "consistent with" with the phrase "which tend to establish" in § 1 (B) (ii). *Id.*

The Governor's amendment, eventually adopted into law, was plainly intended to limit the scope of the bill's original language. As the Appeals Court recognized, "[p]ropositions are 'consistent with' each other if they are compatible and can coexist harmoniously," see *Guzman, supra* at 477, quoting Merriam-Webster's Collegiate Dictionary 266, 253 (11th ed. 2005), and under the language of the bill as originally passed, it is possible to envision many potential claimants whose convictions are reversed because of procedural or evidentiary errors or structural deficiencies at their trials that could well be "consistent" with innocence without *any* tendency to establish it.[6] *Guzman, supra* at 477. The adoption of the gubernatorial amendment had the effect of limiting the class of claimants to

to these charges in 1998. The indictments against Guzman were dismissed with prejudice on March 25, 1997, because the testimony of the detectives was considered to be "essential" to the case against Guzman, and their unavailability due to the then pending Federal indictments against them precluded any retrial.

[6]For example, see *Commonwealth* v. *Loadholt,* 456 Mass. 411, 433-434 (2010) (admission of ballistics certificates to prove that weapon was firearm violated defendant's right to confrontation under Sixth Amendment to United States Constitution and was not harmless beyond reasonable doubt); *Commonwealth* v. *Cohen (No. 1),* 456 Mass. 94, 118-119 (2010) (partial closure of

those who received judicial relief on grounds that directly impli-
cate innocence. We agree with the Appeals Court that even with
the "more stringent" language, *id.*, the statute does not express
an intent to limit *eligibility*, a threshold question, to individuals
whose convictions were vacated or reversed strictly on the basis
"of compelling or overwhelming exculpatory evidence," *id.*, that
is, on the grounds that they were actually innocent.

The Commonwealth argues that the eligibility requirements
of § 1 (B), including the one relative to judicial relief, were
intended by the Legislature as gatekeeping provisions, the
importance of which is apparent from the structure of the statute,
which recognizes the difficulties inherent in litigating cases in
which the purported evidence may be difficult to marshal, given
the passage of time and the sensitivity required for victims of
crime. Drawing on comparisons to similar statutes from other
States, particularly New York, the Commonwealth contends that
the statute was designed to foreclose from proceeding those
cases lacking affirmative evidence of innocence. Viewing the
eligibility provision as a screening mechanism, it argues, would
serve the dual purposes of providing compensation to truly
deserving individuals and limiting the class of potential claimants.
Relying on what it views as the plain words of the statute,[7] the

court room during jury empanelment violated defendant's Sixth Amendment
right to public trial); *Commonwealth* v. *Mattei*, 455 Mass. 840, 855-857
(2010) (admission of expert testimony that defendant could not be excluded as
potential source of deoxyribonucleic acid evidence found at scene was
prejudicial to defendant without "accompanying statistical explanation of the
meaning of nonexclusion" and warranted new trial); *Commonwealth* v. *Ba-
cigalupo*, 455 Mass. 485, 495-496 (2009) (conviction reversed where admis-
sion of nontestifying codefendant's confession at murder trial that shootings
involved codefendant and "friend" was constitutional error in contravention
of *Bruton* v. *United States*, 391 U.S. 123 [1968]); *Commonwealth* v. *Williams*,
450 Mass. 894, 905-906 (2008) (new trial required where prosecutor acted
improperly in giving unsworn testimony and vouching for key prosecution
witness); *Commonwealth* v. *Acevedo*, 446 Mass. 435, 451 (2006) (ineffective
assistance of counsel where evidence supported instruction on reasonable
provocation but trial counsel failed to request one); *Commonwealth* v. *Vizcar-
rondo*, 427 Mass. 392, 392 (1998) (new trial warranted due to incorrect jury
instructions on third prong of malice in murder trial); *Commonwealth* v.
*Green*, 420 Mass. 771, 776 (1995) (erroneous disallowance of defendant's
peremptory challenge required reversal of conviction).

[7]According to the Commonwealth, the words "tend to" and "establish"
must be viewed in their context, especially given the reference in the eligibility

statutory structure and scheme, the legislative intent,[8] principles of statutory construction,[9] and the historical context in which the law was enacted,[10] the Commonwealth essentially contends that in order to proceed with a claim the plaintiff must show that the judicial relief he was granted rested on affirmative evidence of innocence. That is, to be eligible, a plaintiff must demonstrate more than that his conviction was set aside because "new evidence would probably have been a real factor in the jury's deliberations," *Commonwealth* v. *Grace*, 397 Mass. 303, 306 (1986); or that an error at trial " 'materially influence[d]' the . . . verdict," *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999), quoting *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967); or even that evidence withheld by the Commonwealth would have provided some "significant aid to the defendant's case," *Commonwealth* v. *Laguer*, 448 Mass. 585, 594 (2007), quoting *Commonwealth* v. *Healy*, 438 Mass. 672, 679 (2003). He must demonstrate that the grounds for relief had some "meaningful tendency" to establish innocence, not just a tendency to assist the defendant's chances for acquittal.

While we agree that the eligibility requirements of c. 258D were intended to limit the class of persons entitled to pursue relief, and in this sense perform a screening function, and that the relief granted must be on grounds tending to do more than merely assist the defendant's chances of acquittal, we do not

---

provision, see G. L. c. 258D, § 1 (B) (ii), to the requirement at trial that a claimant prove his actual innocence by clear and convincing evidence. See G. L. c. 258D, § 1 (C) (vi).

[8]The Commonwealth asserts that because the "parallel" eligibility provision relating to gubernatorial pardons (§ 1 [B] [i]) requires an explicit statement of innocence, the legislative history indicates that the provision relating to judicial relief (§ 1 [B] [ii]) was necessarily strengthened to mirror it, reflecting the Legislature's focus on actual innocence.

[9]Viewing the eligibility provision as a waiver of sovereign immunity, the Commonwealth maintains that principles of statutory construction indicate that such a waiver is to be narrowly and strictly construed. Moreover, the Commonwealth relies on the fact that compensation is awarded without regard to fault as support for a narrow interpretation of eligibility.

[10]The Commonwealth observes that c. 258D was enacted as part of a national trend to provide compensation for erroneous convictions in recognition of the government's moral responsibility to provide redress. According to the Commonwealth, nearly all the statutes of other States express a purpose to compensate only those who are actually innocent, a purpose undoubtedly relied on by the Legislature in enacting c. 258D.

discern a legislative intent that the determination of eligibility be tantamount to a testing of the merits of a claimant's case. If the Legislature intended it to be so, it could have structured the statute to specifically reflect this intent.[11]

Our inquiry begins with the language adopted by the Legislature. See, e.g., *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977) ("salient principle of statutory construction . . . [is] that the statutory language itself is the principal source of insight into the legislative purpose"). Where the language of the statute is clear, we interpret it according to its ordinary meaning. See, e.g., *Law* v. *Griffith*, 457 Mass. 349, 353 (2010). Where a statute fails to specifically define its terms, "we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). Unless the plain meaning of the statute requires it, we will not expand or limit its meaning. See *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Morrison*, 456 Mass. 463, 468 (2010). Finally, a well-established principle of statutory construction is that effect must be given to all of a statute's provisions, so that none will be "inoperative" or "superfluous." *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594, 601 (2010), quoting *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998).

To apply these principles to the phrase, "grounds which tend to establish" the actual innocence of the plaintiff, it is necessary to separate the phrase into its component parts. The term "grounds" refers to "the foundation or basis on which knowledge, belief, or conviction rests." Webster's Third New Int'l Dictionary 1002 (1993). In a legal context, the term is used to

---

[11]The New York statute, for example, explicitly includes a screening mechanism that addresses the full merits of a claimant's case. It requires that a claim "shall state facts in sufficient detail to permit the court to find that claimant is likely to succeed at trial in proving that (a) he did not commit any of the acts charged in the accusatory instrument . . . , and (b) he did not by his own conduct cause or bring about his conviction. The claim shall be verified by the claimant. If the court finds after reading the claim that claimant is not likely to succeed at trial, it shall dismiss the claim, either on its own motion or on the motion of the state." N.Y. Ct. Cl. Act § 8-b(4) (McKinney 1989). Had the Legislature wanted to structure c. 258D to do the same, it could have done so, especially given the other similarities between that statute and c. 258D. See *Guzman* v. *Commonwealth*, 74 Mass. App. Ct. 466, 476 n.9 (2009) (*Guzman*).

describe "[t]he reason or point that something (as a legal claim or argument) relies on for validity." Black's Law Dictionary 772 (9th ed. 2009). We conclude that the Legislature used the term "grounds" to mean "basis." The phrase "tend to establish" combines the verb "tend" with the verb "establish." "Tend" means "to exhibit a direction or approach toward an object or effect." *Guzman, supra* at 476, citing Merriam-Webster's Collegiate Dictionary 1287 (11th ed. 2005). In legal terminology, the term means "[t]o be disposed toward (something)" or "to have a more or less direct bearing or effect." Black's Law Dictionary, *supra* at 1606. "Establish" means "to prove." *Guzman, supra*, citing Merriam-Webster's Collegiate Dictionary, *supra* at 427. Taking these definitions collectively, we concur with the Appeals Court that the phrase is properly understood to mean judicial relief on "grounds resting upon facts and circumstances probative of the proposition that the claimant did not commit the crime." *Guzman, supra* at 477.

b. *Application.* In determining whether Guzman is among the class of persons eligible to seek relief under c. 258D, we review the summary judgment record,[12] including the relevant portions of the trial and motion transcripts, the trial judge's written memorandum of decision on Guzman's motion for new trial, and the Appeals Court's affirmance of the same.[13] See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002); *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989). The parties are essentially in agreement that the judicial relief at issue on the eligibility question is the trial judge's decision allowing the motion for new trial.

(i) *Guzman's criminal case.* The evidence admitted at the criminal trial, relevant to the issue before us, is well summarized and set forth by the Appeals Court and need not be fully repeated here. *Guzman, supra* at 470-472. Essentially, the Commonwealth's case against Guzman was based on a theory of constructive possession of cocaine. Guzman's defense was that he had

---

[12]In an appendix to its motion, the Commonwealth provided the indictments and docket entries from Guzman's criminal case, the memorandum of decision and order allowing his motion for new trial in that case, and the Federal indictments and docket entries from Acerra and Robinson's case.

[13]See *Commonwealth* v. *Guzman*, 40 Mass. App. Ct. 1123 (1996) (unpublished memorandum and order pursuant to Appeals Court's rule 1:28, affirming allowance of motion for new trial).

been mistaken for his cousin, Esteban Maffeo. In support of this defense, he produced a number of witnesses (but not Maffeo) to testify that Maffeo was a separate person and that Guzman was not a drug dealer, but a businessman who owned a beauty salon and towing business. The prosecution sought to show that Guzman and Maffeo were the same person.

The primary witnesses against Guzman were two Boston police detectives, Kenneth Acerra and Walter Robinson,[14] who had seized cocaine and cash as the result of searches they had conducted of two apartments, a safe deposit box, and an automobile registered to Maffeo but allegedly driven by Guzman on occasion. Importantly, the detectives also testified that they had observed Guzman selling cocaine in separate instances to two other individuals, Arthur Logue and James Spencer, neither of whom testified at the trial. Those individuals had been arrested at different times before Guzman and had been the subjects of separate prosecutions. Spencer, as it developed, had been represented in his criminal case by Guzman's trial attorney.

Guzman was convicted on January 29, 1992. He subsequently filed a motion for a new trial, claiming that his counsel was ineffective due to a conflict of interest that prejudiced his defense.

After an evidentiary hearing, the trial judge granted Guzman a new trial on grounds that are not in dispute. She found that the central issue in the case was identification (or misidentification), and that Guzman's attorney's personal concerns regarding a potential conflict arising from his representation of Spencer had led him to take steps contrary to the interests of Guzman at trial. More specifically, she found that Guzman's trial attorney declined to call Spencer and Logue as witnesses at Guzman's trial, even knowing that they likely would have contradicted the testimony of Detectives Acerra and Robinson that Guzman was the person who sold them (Spencer and Logue) drugs, solely because he desired to avoid the appearance of a conflict of interest.[15,16] The

---

[14]See note 5, *supra.*

[15]Guzman's trial counsel submitted an affidavit in support of and testified at the hearing on the motion for a new trial. In both, he averred that Logue and Spencer, had they been called as witnesses at the trial, would have testified that Guzman was not the man from whom they had purchased drugs when observed doing so by Acerra and Robinson.

[16]Guzman's attorney not only failed to call Spencer and Logue, he affirmatively

judge concluded that this conduct constituted ineffective assistance of counsel that prejudiced Guzman's right to a fair trial by causing the exclusion of testimony crucial to his defense of mistaken identity.[17]

(ii) *Guzman's civil claim under c. 258D.* As noted, Guzman subsequently brought this claim against the Commonwealth, alleging that he was in the class of persons entitled to recover under c. 258D. Summary judgment was granted to the Commonwealth only on the ground that Guzman would be unable to establish that he met the eligibility requirement of having received judicial relief on grounds that tended to establish his innocence. G. L. c. 258D, § 1 (B) (ii). The motion judge first found that, "while Guzman claims he is innocent of all charges, he has submitted neither new evidence nor affidavits showing genuine material facts in dispute," and then concluded, "as a matter of law," that Guzman was not eligible under the statute "because the charges against him were not dismissed on grounds which tend to show innocence." The judge reasoned that Guzman's motion for new trial was allowed because "he may have been prejudiced" by his attorney's conflict of interest,[18] and that the eligibility requirements were not met because there had been evidence at trial corroborating the salient points of the detectives' testimony regarding Guzman's guilt. The judge ultimately

---

(and successfully) moved to prevent Logue from being called as a witness by the Commonwealth at the trial.

[17]In an unpublished memorandum and order affirming the judge's order granting a new trial, the Appeals Court explained that "[t]he centrality of the identification issue at trial supports the judge's conclusion as to the materiality of Logue's potential testimony." *Commonwealth* v. *Guzman, supra.*

[18]In her written decision, the motion judge alluded to the indictments against Detectives Acerra and Robinson and noted these indictments "certainly" would have affected the detectives' credibility and "potentially the validity" of the search warrants obtained in their investigation of Guzman. In ultimately concluding that Guzman was not eligible to seek relief, the motion judge cited G. L. c. 258D, § 1 (F), which allows the admission of evidence obtained in violation of a defendant's constitutional rights, and explained that such a requirement "manifest[ed] a legislative intent to exclude from compensation" those individuals whose convictions are overturned because of illegally obtained evidence. Although the motion for a new trial was not based on the invalidity of search warrants, or the consequent inadmissability of evidence, we agree that c. 258D explicitly provides for the admission of such evidence at the trial of the c. 258D claim.

determined Guzman's failure to "adduce evidence sufficient to create a question of fact as to whether . . . the charges against him were dismissed on grounds" tending to establish his innocence excluded him from seeking compensation under c. 258D.

The Appeals Court reversed, explaining that in determining eligibility, the statute did not require that the "grounds for relief be examined in relation to the strength of the evidence of guilt adduced at the claimant's criminal trial," *Guzman, supra* at 475, and that the language of the statute did not "import[] into the eligibility provision a preliminary assessment" of the ultimate merits of the claim.[19] *Id.* at 476. We agree.

Where the grounds for relief are not in dispute, the question whether they "tend to establish" that the plaintiff did not commit the crime is primarily a question of law. Here, there is no dispute that the judge granted a new trial because Guzman's defense of misidentification was prejudiced by defense counsel's conflicting interests that resulted in his failure to call witnesses who likely would have testified that Guzman was not the person identified by the detectives as the person they claimed to observe selling them drugs. In these circumstances, it cannot be said that these grounds did not rest on facts and circumstances probative of the proposition that Guzman did not commit the crimes charged as required by G. L. c. 258D, § 1 (B) (ii). Although presented in the context of a claim of ineffective assistance of counsel, the relief granted to Guzman rested on the assumption, articulated by the trial judge, that the erroneously omitted evidence was probative of the conclusion that the culprit was someone else. *Guzman, supra* at 478.[20]

Where Guzman's eligibility to bring the lawsuit was the only ground on which the Commonwealth's motion for summary

---

[19]The Appeals Court recognized that, to be sure, "all the evidence relied on by the parties on the issue of actual innocence, including any inculpatory evidence from the criminal trial that the Commonwealth may choose to introduce, eventually must be weighed and evaluated to determine whether the claimant has met his burden of proof [that he is actually innocent] and is entitled to recover." *Guzman, supra* at 475.

[20]Not all cases in which a new trial is granted on ineffective assistance grounds necessarily will result in eligibility to bring suit under G. L. c. 258D. Essential to our analysis here is that counsel's ineffective assistance took the form of depriving Guzman of the introduction of evidence tending to establish his actual innocence.

judgment was brought, it was error to grant it. That judgment is reversed, and partial summary judgment is to be granted against the Commonwealth, pursuant to Mass. R. Civ. P. 56 (c), on so much of Guzman's claim as alleges that he is eligible to seek relief under the statute. G. L. c. 258D, § 1 (B) (ii). The case is remanded to the Superior Court for further proceedings consistent with this decision.

*So ordered.*