NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us.

22-P-580                                        Appeals Court

ROBERTO CRUZ  vs.  COMMONWEALTH.

No. 22-P-580.

Essex.      January 12, 2023. – June 7, 2023.

Present:  Meade, Rubin, & Blake, JJ.

Erroneous Conviction.  Assault and Battery.  Statute,
    Construction.  Practice, Civil, Summary judgment.
    Practice, Criminal, Nolle prosequi.


    Civil action commenced in the Superior Court Department on
May 28, 2019.

    The case was heard by John T. Lu, J., on a motion for
summary judgment.

    Adam Hornstine, Assistant Attorney General, for the
Commonwealth.
    Steven J. Rappaport for the plaintiff.


    BLAKE, J.  The question raised by this appeal is whether

the plaintiff, Roberto Cruz, is eligible to pursue a claim for

compensation under G. L. c. 258D, the erroneous convictions

statute (statute).  See G. L. c. 258D, § 1 (B) (ii).  Because

the facts adduced at Cruz's criminal trial supported a

conviction of assault and battery, a crime for which Cruz was

indicted but that the Commonwealth voluntarily dismissed before the case went to the jury, we conclude that Cruz is not eligible for compensation under the statute. Accordingly, we reverse the order denying the Commonwealth's motion for summary judgment and remand the case to the Superior Court, where judgment shall enter for the Commonwealth.[1]

Background. 1. Prior proceedings. Cruz was indicted on three counts of indecent assault and battery on a child, subsequent offense; one count of child enticement; and one count of assault and battery. A jury convicted Cruz of two counts of indecent assault and battery on a child and acquitted him on a third count of indecent assault and battery and on child enticement.[2] The Commonwealth nol prossed the charge of assault and battery before the case went to the jury. See Commonwealth v. Cruz, 93 Mass. App. Ct. 136, 136 n.1 (2018) (Cruz I). This court reversed the judgments, concluding that the evidence was insufficient to establish that the touchings were indecent. See

---

[1] We disagree with the Commonwealth's contention that it may appeal any denial of summary judgment in a wrongful conviction case. That right is limited to cases such as this one that challenge a plaintiff's eligibility to sue. See Irwin v. Commonwealth, 465 Mass. 834, 840-842 (2013).

[2] After the verdicts, Cruz pleaded guilty to the subsequent offense portion of the indictments. Commonwealth v. Cruz, 93 Mass. App. Ct. 136, 136 n.1 (2018). He was sentenced to not more than fifteen years and one day and not less than fifteen years.

id. at 139-140. Cruz then filed a complaint in the Superior Court seeking compensation under the statute. The Commonwealth moved for summary judgment, arguing that Cruz failed to satisfy the jurisdictional prerequisite to bring suit under the statute because his underlying convictions were not reversed on grounds tending to establish his innocence of all crimes charged in the indictments. See G. L. c. 258D, § 1 (B) (ii). A Superior Court judge denied the Commonwealth's motion, finding that the Commonwealth's failure to present sufficient evidence of an essential element of the crime was probative of innocence, and therefore "it cannot be said that vacating the plaintiff's conviction was not on grounds which tend to establish innocence."

2. The underlying criminal case. We recite the salient facts of the criminal case as set forth in our prior opinion. The indictments stemmed from a series of events that occurred in 2014 at an aviation company. See Cruz I, 93 Mass. App. Ct. at 137. Jane,[3] a thirteen year old girl with Asperger's Syndrome, was an intern at the aviation company and had met Cruz before at the airport. Id. Cruz, who was almost sixty years old at the time, waved Jane over to him and told her that he would like to give her a hug, but they should do that in a different room.

---

[3] We refer to the child using the pseudonym used in our prior opinion.

Id.  Jane then went into a hallway and waited for Cruz for a couple of minutes before returning to work.  Id.  Later, Jane saw Cruz and asked if he still wanted a hug.  He hugged her briefly around the shoulders.  Id.

Cruz then asked Jane if she wanted another hug before leading her into a separate room, with no one else present.  Cruz I, 93 Mass. App. Ct. at 137.  This time, he gave her a second hug, which was tighter, and he kissed her on the neck.  See id.  Cruz hugged Jane a third time, lower down on her waist and hips, and he held her "very tight."  Id.  Jane was "a little bit alarmed" by this hug.  Finally, Cruz grabbed Jane's shirt at her right hip and lifted it up slightly before pausing and putting it back down.  See id.  He did not expose or touch any of her skin while lifting the shirt.  See id.  Cruz also grabbed Jane's hand.  See id.

On direct appeal, Cruz argued that the evidence was insufficient to support his convictions.  We agreed and held that "the evidence was insufficient to establish that the defendant's conduct intruded upon a private or intimate area of the body so as to be considered 'indecent' within the meaning of the criminal statute."  Cruz I, 93 Mass. App. Ct. at 140.  Notwithstanding, we noted that because of the age disparity between Jane and Cruz and the fact that Cruz led Jane to a separate room before the alleged indecent touching, the jury

could have found that Cruz knew that his actions were inappropriate.  Id. at 139.  Furthermore, we observed that "the defendant's general conduct toward Jane may well have crossed acceptable norms of appropriate behavior."  Id. at 141.  Importantly, we stated that "the defendant's behavior toward Jane may have constituted the criminal offense of assault and battery, in the sense of an intentional, but unconsented to, touching."  Id. at 141 n.8.

Discussion.  We review the denial of a motion for summary judgment de novo.  See Irwin v. Commonwealth, 465 Mass. 834, 842 n.18 (2013) (applying de novo standard of review); Guzman v. Commonwealth, 458 Mass. 354, 362 (2010), citing Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).

1.  Statutory framework.  The statute was enacted to allow individuals who were "erroneously convicted but factually innocent" to have the opportunity to obtain compensation.  See Irwin, 465 Mass. at 847.  To do so, "the Commonwealth has granted a limited waiver of its sovereign immunity under the erroneous convictions statute to that class of claimants who establish that they are eligible for relief."  Id. at 842.  A claimant must first prove that he is eligible to pursue compensation and at trial must then "prove, by clear and convincing evidence, . . . that he did not commit the charged

offense."  Id. at 839.  This case pertains only to the eligibility aspect of the statute.

Section 1 (B) and (C) (vi) of the statute "perform a screening function" that limits the class of claimants that is eligible to bring suit.  Guzman, 458 Mass. at 360.  A claimant is eligible to bring a claim if he has "been granted judicial relief by a state court of competent jurisdiction, on grounds which tend to establish the innocence of the individual as set forth in clause (vi) of subsection (C)."  G. L. c. 258D, § 1 (B) (ii).  In turn, § 1 (C) (vi) requires the plaintiff to show that "he did not commit the crimes or crime charged in the indictment or complaint or any other felony arising out of or reasonably connected to the facts supporting the indictment or complaint, or any lesser included felony" (emphasis added).
G. L. c. 258D, § 1 (C) (vi).

Previous appellate cases that have analyzed the eligibility requirement of G. L. c. 258D have not addressed the incorporation of § 1 (C) (vi) into § 1 (B) (ii).  See, e.g., Renaud v. Commonwealth, 471 Mass. 315, 318 (2015); Irwin, 465 Mass. at 839; Guzman, 458 Mass. at 356.  At oral argument, both parties agreed that there were no appellate cases on the precise question presented here, and we have found none.  Cruz argues that to meet the eligibility requirement under § 1 (C) (vi), he need show only that he was granted judicial relief on grounds

that tend to establish innocence of the crime for which he was tried. In contrast, because Cruz was indicted for assault and battery, the Commonwealth argues that § 1 (C) (vi) makes him ineligible to sue. This is because reversal of his convictions was not on grounds tending to establish innocence on that charge.

We review questions of statutory interpretation de novo. See Commonwealth v. Perella, 464 Mass. 274, 276 (2013).

> "A fundamental principle of statutory interpretation is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished . . ." (quotation and citation omitted).

Mahan v. Boston Retirement Bd., 490 Mass. 604, 613 (2022).

To support his claim, Cruz relies on Renaud, in which the court stated, "Although [G. L. c. 258D,] § 1 (B) (ii)[,] references § 1 (C) (vi), the eligibility requirement is separate and distinct from the merits of the claim of relief that a claimant must establish at trial, namely that he or she did not commit the charged offense" (quotation and citation omitted). Renaud, 471 Mass. at 319. He argues that, as in Renaud, the Commonwealth conflated the eligibility requirement with the merits of the claim itself. While we agree that the eligibility requirement is distinct from the merits of the claim, Cruz's

reliance on this isolated sentence is misplaced. In <u>Renaud</u>, the court responded to the Commonwealth's contention that eligibility under the statute was limited to those individuals who are "in fact, innocent." <u>Id</u>. Here, the Commonwealth does not argue, nor do we conclude, that the incorporation of § 1 (C) (vi) into the eligibility requirement means that Cruz must prove his innocence by clear and convincing evidence to meet the eligibility requirements of the statute.

"In interpreting the meaning of a statute, we look first to the plain statutory language." <u>Worcester</u> v. <u>College Hill Props., LLC</u>, 465 Mass. 134, 138 (2013). Here, the Legislature inserted G. L. c. 258D, § 1 (C) (vi), into the statute in part to define "innocence" under § 1 (B) (ii). In addition, § 1 (B) (ii) requires proof of "grounds which tend to establish . . . innocence." To answer the critical question of innocence of what, the Legislature expressly incorporated by reference the list of crimes in § 1 (C) (vi). Therefore, Cruz must show that he was granted judicial relief on grounds that tend to establish that he is innocent of the crime, of the crimes charged in the indictments, or of any other felony arising out of the facts underlying the indictment. See G. L. c. 258D, § 1 (B) (ii); <u>Santana</u> v. <u>Commonwealth</u>, 90 Mass. App. Ct. 372, 377-378 (2016) (Trainor, J., concurring).

It therefore follows that the reversal of the judgments on the charges of indecent assault and battery does not end our analysis, as this fact is only one of three eligibility considerations. We therefore turn to the question whether Cruz was granted judicial relief on grounds that tend to establish that he is innocent of the "crimes . . . charged in the indictment," here assault and battery. See G. L. c. 258D, § 1 (B) (ii).

2. Grounds tending to establish innocence. "Where the grounds for relief are not in dispute, the question whether they 'tend to establish' that the plaintiff did not commit the crime is primarily a question of law." Guzman, 458 Mass. at 365. There is no bright-line rule that defines what constitutes grounds of judicial relief that tend to establish innocence. Indeed, we have rejected a one size fits all approach, see Santana v. Commonwealth, 90 Mass. App. Ct. at 375, in favor of "a case-specific, fact-based approach," Santana v. Commonwealth, 88 Mass. App. Ct. 553, 555 (2015). Cruz's reliance on Santana and Renaud as standing for the proposition that a reversal based on insufficient evidence constitutes grounds tending to establish innocence is misplaced. See Renaud, 471 Mass. at 316-317; Santana, 88 Mass. App. Ct. at 555. In both cases, the convictions were reversed due to insufficient evidence that the plaintiff was the individual who had committed the crime. See

Renaud, supra (conviction reversed due to insufficient evidence of identity); Santana, 88 Mass. App. Ct. at 555 (conviction reversed due to insufficient evidence of possession where defendant was passenger in vehicle). Notwithstanding, both cases held that that "insufficient evidence does not 'necessarily equate to actual innocence.'" See Santana, 88 Mass. App. Ct. at 554, quoting Renaud, supra at 319.

In determining Cruz's eligibility, we must examine the four corners of the underlying judicial decision. See Riley v. Commonwealth, 82 Mass. App. Ct. 209, 214 (2012) (court required "to look not only at the legal rationale for judicial relief but also at the 'facts and circumstances' on which the relief rests"). Cruz argues that our decision reversing his convictions "left no theory upon which . . . [he] could be found guilty of the crime for which he was tried." However, as the Commonwealth properly claims, because our decision reversing Cruz's convictions did not constitute grounds tending to establish his innocence on the assault and battery charge, Cruz is ineligible to bring an action under the statute. As set forth in that opinion, we concluded that Cruz's behavior, although not indecent, may constitute assault and battery as it was an intentional, unconsented touching. Cruz I, 93 Mass. App. Ct. at 141 & n.8. And, as the concurrence there noted, "[h]ad the Commonwealth wanted to, it plainly could have prosecuted the

unwanted hug and the slight lifting of the bottom of Jane's shirt as simple assault and batteries." Id. at 144-145 (Milkey, J., concurring). This is based on the fact that Cruz hugged Jane twice, the second of those hugs being "very tight" and with his hands "lower down, on her waist and hips." Id. at 137. Cruz also kissed Jane's neck and grabbed her hand while lifting up her shirt slightly.[4] Id. Utilizing a "fact-based approach," Santana, 88 Mass. App. Ct. at 555, the underlying conduct does not tend to establish that Cruz is innocent of assault and battery. See Santana, 90 Mass. App. Ct. at 376 ("while it is true that principles of double jeopardy preclude any further prosecution of the plaintiff on the earlier indictment, . . . his conviction was not reversed for reasons that tend to establish his innocence").

---

[4] Cruz contends that the factual issue of consent was never presented to the jury at his criminal trial. While the Commonwealth must prove nonconsent for the charge of assault and battery based on an offensive touching, see Commonwealth v. Farrell, 31 Mass. App. Ct. 267, 268 (1991), Cruz ignores a necessary premise of our prior decision. From this, and particularly with the phrase "unwanted hug," it is reasonable to conclude that the jury did hear evidence of Jane's nonconsent. Cf. Commonwealth v. Shore, 65 Mass. App. Ct. 430, 432-433 (2006) (lack of consent analyzed on totality of circumstances including disparity in age, experience, sophistication, and authority). Ultimately though, this does not impact our analysis because the Commonwealth nol prossed the assault and battery charge before the case went to the jury.

Although we reversed Cruz's convictions of indecent assault and battery, our decision expressly concluded that under the facts and circumstances of that case, Cruz could have been prosecuted on the indictment charging assault and battery. See Riley, 82 Mass. App. Ct. at 214. That the Commonwealth chose to file a nolle prosequi on the charge of assault and battery does not alter our result. There may be a myriad of reasons that the Commonwealth chose to do so. Indeed, prosecutors have broad leeway to voluntarily dismiss a charge as a matter of trial strategy. See Commonwealth v. Pyles, 423 Mass. 717, 719 (1996). Nothing in the record before us suggests that the voluntary dismissal was suggestive of actual innocence within the meaning of G. L. c. 258D, § 1 (B) (ii). Nor is it material to the eligibility threshold. Put another way, where we set aside Cruz's convictions but said nothing tending to establish his innocence of another crime for which he was indicted, assault and battery, no viable claim under G. L. c. 258D can arise. Indeed, our underlying decision in the criminal case held only that Cruz's conduct was not indecent as defined by the case law. Because his overturned convictions are not probative of his actual innocence under § 1 (B) (ii), Cruz is not eligible to sue the Commonwealth under G. L. c. 258D. Cf. Santana, 90 Mass. App. Ct. at 375-376 (where theory of guilt jury relied upon was

unclear, reversal of conviction due to erroneous instruction did not tend to establish defendant's innocence).

By contrast, our dissenting colleague simply concludes that we have prejudged the merits, he but fails to address the precise question before us. The dissent takes an overly broad view of the statute and seemingly concludes that reversal of the plaintiff's convictions meets the gatekeeper threshold for eligibility regardless of the plaintiff's ancillary untried conduct. The flaw in the dissent is that it ignores the fact that the statute includes untried crimes set forth in the indictments and uncharged felonies that can be discerned from the facts and circumstances of the case for purposes of eligibility to sue. The dissent's theory fails to honor the Legislature's comprehensive approach to evaluating eligibility for relief as well as its overarching purpose of effectuating only a limited waiver of the Commonwealth's sovereign immunity.[5] See Irwin, 465 Mass. at 842.

Conclusion. The order denying the Commonwealth's motion for summary judgment is reversed. The case is remanded to the Superior Court where judgment shall enter for the Commonwealth.

So ordered.

---

[5] We take exception to the dissent's description of the majority as reflecting the "disgust" with which we view the plaintiff's behavior. See post at   . Such a categorization has no place in the analysis of the claims presented on appeal.

RUBIN, J. (dissenting).  Today, the court majority guts the erroneous convictions statute (statute), G. L. c. 258D, an important statute that provides a damages remedy to innocent people who have been exonerated after wrongful conviction and incarceration.  The majority turns the relatively low bar set by the Legislature for determining which wrongfully incarcerated plaintiffs can bring a claim under the statute into an insurmountable wall barring a large segment of those innocent individuals who have wrongfully been imprisoned from seeking the redress the Legislature provided.  The majority's approach makes it impossible for those exonerated individuals to sue if either, as happens in so many cases, including this one, the Commonwealth has dismissed any of the charges against them, or a judge can imagine some hypothetical, uncharged crime the individual's "behavior . . . may constitute," ante at  , a crime that was never charged, perhaps never even thought of, by law enforcement and prosecutors.  The court says that unless the judicial decision exonerating the wrongfully imprisoned individual opines about his or her innocence of each such charge and crime, this exoneree no longer has the remedy the Legislature crafted both to deter wrongful imprisonment and to compensate for it.  But because courts lack jurisdiction to opine on charges or crimes not before them, there can never be such a judicial decision.  Thus, in one fell swoop, the court

majority eliminates this large class of exonerees from the protection of the statute, a result the Legislature obviously did not intend.

The court majority, like the majority and the concurrence in Commonwealth v. Cruz, 93 Mass. App. Ct. 136 (2018) (Cruz I), in which we held that the plaintiff in the instant case, Roberto Cruz, was factually innocent of all the charges of which he was convicted, emphasizes the disgust with which they view the plaintiff's behavior.  Indeed, the first thing the majority tells us after initially describing our holding him in Cruz I innocent of all the charges of which he was convicted, is "[n]otwithstanding, we noted that because of the age disparity between Jane and Cruz and the fact that Cruz led Jane to a separate room before the alleged indecent touching, the jury could have found that Cruz knew that his actions were inappropriate.  [Id.] at 139.  Furthermore, we observed that 'the defendant's general conduct toward Jane may well have crossed acceptable norms of appropriate behavior.'  Id. at 141." Ante at   .

But the court's ruling today applies to all unlawfully imprisoned individuals who have been exonerated by our courts, not just those individuals a court may view with distaste. Unlawfully incarcerated exonerees are the very people for whose benefit the Legislature enacted the statute, in order to deter

wrongful convictions and incarceration, and to compensate those who have been imprisoned wrongfully.

The decision today thus will do grave damage to the Commonwealth's attempts to provide justice for exonerated people who have been imprisoned illegally. Because it ignores both the plain language of the statute and the precedents of the Supreme Judicial Court, I respectfully dissent.

Discussion. The plaintiff, Roberto Cruz, was held in jail for over two and one-half years after being convicted wrongfully of crimes he did not commit, two counts of indecent assault and battery on a child under fourteen. See G. L. c. 265, § 13B. That he was factually innocent was the flat, explicit, unequivocal, and final holding of this court in Cruz I, 93 Mass. App. Ct. 136.

"In 2004, in the wake of a growing number of exonerations both in Massachusetts and across the nation, the Legislature enacted c. 258D, which created a remedy, in the form of a new cause of action (and a corresponding waiver of sovereign immunity) that could be brought against the Commonwealth by persons who had been wrongfully convicted and imprisoned. . . . The statute provides a variety of remedies for a person so harmed, including the recovery of up to $500,000 in damages from the Commonwealth. G. L. c. 258D, § 5." Guzman v. Commonwealth, 458 Mass. 354, 355-356 (2010) (Cordy, J.).

Cruz filed an action under the statute, which, as described, provides a damages remedy to those who have been wrongfully convicted and incarcerated if they can "establish, by clear and convincing evidence" that they "did not commit the crimes or crime charged in the indictment or complaint or any other felony arising out of or reasonably connected to the facts supporting the indictment or complaint, or any lesser included felony."  G. L. c. 258D, § 1 (C) (vi).  Cruz -- again, wrongfully convicted and incarcerated for over two and one-half years -- is entitled to his day in court in order to prove his claim that he is factually innocent.

The Commonwealth, however, apparently unable to accept the Legislature's action in creating this remedy, argues, not for the first time, that the threshold question of eligibility even to bring suit under G. L. c. 258D, § 1 (B) (ii) (eligibility provision) -- a provision that merely limits the class of potential litigants to "those who have been granted judicial relief by a state court of competent jurisdiction, on grounds which tend to establish the innocence of the individual" (emphasis added) -- actually requires the court to look at the entire case in advance of trial and determine the merits, without any full record of what happened.  It argues that the plaintiff must show that the decision reversing or vacating the plaintiff's conviction means he would win on the merits of his

claim under the statute and could prove actual innocence not only of all the crimes for which he was tried, but of any charged-but-dismissed crime or uncharged felony that might have arisen out of the facts supporting the complaint, even though neither the court vindicating the plaintiff, nor any other, has ever even had authority to opine on the matter.

The Supreme Judicial Court, however, has rejected this argument, explicitly, in Guzman:

> "While we agree that the eligibility requirements of c. 258D were intended to limit the class of persons entitled to pursue relief, and in this sense perform a screening function, and that the relief granted must be on grounds tending to do more than merely assist the defendant's chances of acquittal, we do not discern a legislative intent that the determination of eligibility be tantamount to a testing of the merits of a claimant's case. If the Legislature intended it to be so, it could have structured the statute to specifically reflect this intent."

Guzman, 458 Mass. at 360-361. "[T]he language of the statute did not 'import[] into the eligibility provision a preliminary assessment' of the ultimate merits of the claim" (citation omitted). Id. at 365. Indeed, in Guzman the Supreme Judicial Court held that the eligibility hurdle was met in a case weaker than this, where the judicial basis for reversing the plaintiff's conviction did not even address actual innocence, but only the failure to call witnesses who might have rebutted a detective's identification testimony. Id.

In the case before us, this court has already held that the plaintiff was factually innocent of the only two charges to go to the jury of which he was convicted.  Obviously, this "tends to establish" that Cruz "did not commit the crimes or crime charged in the indictment or complaint or any other felony arising out of or reasonably connected to facts supporting the indictment or complaint, or any lesser included felony."  G. L. c. 258D, § 1 (B) (ii), (C) (vi).  See Guzman, 458 Mass. at 362 ("'tend[s] to establish' . . . is properly understood to mean judicial relief on 'grounds resting upon facts and circumstances probative of the proposition that the claimant did not commit the crime'" [citations omitted]).  Our prior decision may not establish innocence of all felonies that might be found to arise out of the facts supporting the indictments.  Indeed, because the court lacked jurisdiction to opine on that question, the decision could not establish that.  But in concluding that the plaintiff did not commit those crimes charged in the indictments that the Commonwealth sent to the jury, and of which he was convicted, our prior decision certainly "tends" to establish it.  That should be the end of the case.

Unfortunately, the court majority accepts the Commonwealth's invitation.  The majority drains of most meaning the "tend to establish" language in the statute -- the meaning of which is in fact the "precise question before us," ante at

.  Indeed, it says, clearly mistakenly, Cruz's "overturned convictions are not probative of his actual innocence."  <u>Ante</u> at   .

And the court majority goes further.  Examining the relationship of our decision in <u>Cruz I</u> with another charged offense (assault and battery) of which Cruz was not convicted -- indeed, that was not even thought by the Commonwealth worthy of submission to the jury and that was so weak it was nol prossed by the Commonwealth after the evidence was presented to the jury -- the majority concludes that "because our decision reversing Cruz's convictions did not constitute grounds tending to establish his innocence on the assault and battery charge, he is ineligible to bring an action under the statute."  <u>Ante</u> at   .[6] This is precisely the preliminary assessment of the merits that the Supreme Judicial Court has held is inappropriate.

Of course our decision in <u>Cruz I</u> did not tend to establish the plaintiff's innocence of the assault and battery charge.  He

---

[6] Nolle prosequi is a Latin phrase that means "not to wish to prosecute."  In this Commonwealth, a nolle prosequi, the verb form of which is "nol pros," <u>Del Gallo</u> v. <u>District Attorney for the Suffolk Dist</u>., 488 Mass. 1008, 1008 (2021), and of which the past tense of the verb form is "nol prossed," <u>Pina</u> v. <u>Commonwealth</u>, 491 Mass. 1020, 1020 (2023), is entered by the prosecutor in order to terminate the prosecution of one or more charges.  "After jeopardy attaches, a nolle prosequi entered without the consent of the defendant shall have the effect of an acquittal of the charges contained in the nolle prosequi." Mass. R. Crim P. 16 (b), 378 Mass. 885 (1979).

was not convicted of it, so we properly did not address it. Indeed, the Commonwealth, despite presenting evidence on it decided not to send it to the jury. The Commonwealth, rather, asked the judge to enter an order that is in essence an acquittal of the charge, see Mass. R. Crim P. 16 (b), 378 Mass. 885 (1979), and which, under principles of double jeopardy, prohibits the plaintiff from now being tried on the charge.

The reasons for the nolle prosequi do not matter, but the majority's statement that voluntary dismissal by the Commonwealth is not even "suggestive of actual innocence" does not withstand scrutiny. Ante at   . Unlikelihood of conviction is an obvious reason a prosecutor would nol pros a nonduplicative charge after having put on all the Commonwealth's evidence with respect to the charge. In any event, for the reasons previously indicated, our decision in Cruz I does "tend[] to establish" Cruz's factual innocence of any crimes that may have arisen out of the facts supporting the indictments -- by establishing his innocence of all the charges the Commonwealth saw fit to send to the jury and of which he was convicted (all wrongfully).

The approach taken instead by the court majority unfortunately amounts to the examination of the ultimate merits, and usurpation of the jury function, that the Supreme Judicial Court has repeatedly warned us the eligibility provision does

not allow.  And it leaves a hollowed-out statute, which is not what either the Legislature, or the Supreme Judicial Court in construing the statute, intended.

Our job is not to scan the record of the criminal trial -- incomplete in any event with respect to dismissed or uncharged crimes -- to determine whether we can come up with some charged crime or uncharged felony never even sent to the jury arising out of the facts underlying reversed convictions, crimes by definition not involved in the judicial decision finding all actual convictions unsupported by sufficient evidence.  We are supposed to be asking only the threshold eligibility question: Does Cruz I, finding the plaintiff factually innocent of the actual charges on which he was convicted, "tend to establish" his factual innocence?  It obviously does.

 Nor, obviously, does the dictum in the footnote in Cruz I saying Cruz's behavior "may" have amounted to assault and battery amount to an expression of an opinion on the merits of the assault and battery charge that was not before us.  That dictum says only:

> "While the defendant's behavior toward Jane may have constituted the criminal offense of assault and battery, in the sense of an intentional, but unconsented to, touching, simple assault and battery is not a lesser included offense of indecent assault and battery on a child, because lack of consent is not an element of the latter charge."

Cruz I, 93 Mass. App. Ct. at 141 n.8. This states only that even if the conduct amounted to assault and battery, that is not a lesser included offense of the unsupported offense of conviction.

Nonetheless, in reaching its decision, the majority now holds, based on a concurrence representing the view of one lone justice of this court, that, on the merits, Cruz was guilty of assault and battery: "[A]s the concurrence there noted, '[h]ad the Commonwealth wanted to, it plainly could have prosecuted the unwanted hug and the slight lifting of the bottom of Jane's shirt as simple assault and batteries.'" Ante at    , quoting Cruz I, 93 Mass. App. Ct. at 144-145 (Milkey, J., concurring). Indeed, the majority somehow transmogrifies that conclusion of one justice, writing only for himself, which has no precedential weight, and which is not even the majority's dictum, into a conclusion that "our decision expressly concluded that under the facts and circumstances of that case, Cruz could have been prosecuted on the indictment charging assault and battery," ante at    , which the decision in Cruz I clearly did not.

We are not supposed to be asking whether we think Cruz committed a crime that was not sent to the jury and on which, in our earlier case, we did not (and could not properly) opine, in this case assault and battery. The jury in his criminal trial did not decide the question because the Commonwealth concluded

the claim was not worthy of presentation to it and nol prossed the charge before it went to the jury. In this action, a second jury, and not appellate judges who have heard no evidence, are, in light of Cruz I, supposed to determine whether the plaintiff can establish his factual innocence not only of the crimes of which he was convicted, which has already been decided, but of that charge, as well as any other charge that might have arisen out of the conduct underlying his indictments, by clear and convincing evidence.

Cruz may lose if he is allowed to attempt that. I have no idea and neither do my colleagues. But the court today deprives him of the opportunity to do so, and the jury of the opportunity to decide.

Conclusion. Because this denies Cruz his day in court in violation of the statute and the decisions of the Supreme Judicial Court that protect those, like him, who are wrongfully convicted and incarcerated, and because this construction of the eligibility clause will improperly narrow for the future the avenue of relief the Legislature has decided to provide for the wrongfully convicted and incarcerated, I respectfully dissent.